IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **Wilbanks Securities, Inc.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-17-481-R |
| | ) | |
| **FINANCIAL INDUSTRY REGULATORY** | ) | |
| **AUTHORITY (FINRA), SECURITIES** | ) | |
| **AND EXCHANGE COMMISSION (SEC),** | ) | |
| **and RBC CORRESPONDENT SERVICES,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

Before the Court is Plaintiff Wilbanks Securities, Inc.'s Emergency Motion for a Temporary Restraining Order. Docs. 11 & 14. Defendants Financial Industry Regulatory Authority (FINRA) and Securities and Exchange Commission (SEC) have responded. Docs. 16 & 17.[1] Having considered the parties' arguments and submissions, and for the reasons set forth below, the Court denies Plaintiff's application for a temporary restraining order due to the lack of subject matter jurisdiction.

**I. Background**

Wilbanks Securities, Inc. is a securities broker-dealer headquartered in Oklahoma City. Doc. 11. It argues in this action that its regulating authority, FINRA, is unfairly applying one if its rules and that, should it continue to do so, Wilbanks will collapse.

---

[1] Though originally named as a defendant in this action, RBC Correspondent Services has now been voluntarily dismissed by Wilbanks. Doc. 21.

1

FINRA is the self-regulatory organization (SRO) responsible for enforcing compliance by its members with the Securities Exchange Act, with authority delegated by the Securities and Exchange Commission (SEC). *See Karsner v. Lothian*, 532 F.3d 876, 880 (D.C. Cir. 2008); 15 U.S.C. § 78o–3(b)(7). Because Wilbanks Securities is a member of FINRA, it is subject to its rules and regulations, as well as those of the Securities Exchange Act and the SEC.

Wilbanks's present troubles began when an arbitration panel rendered a $1,073,000 award against it on April 13, 2017. *See* Doc. 11, Ex. 1, Arbitration Award in FINRA Case No. 16-00226, *Huitt v. Wilbanks Securities, Inc.*[2] A few days later, on April 18, 2017, FINRA notified Wilbanks that it had learned of the adverse arbitration award and that this placed Wilbanks in violation of the Net Capital Rule, an SEC regulation that requires every securities broker to maintain a certain amount of net capital at all times. 17 C.F.R. § 240.15c3–1.

FINRA ordered Wilbanks to immediately book the adverse award as a liability. Doc. 11, Ex. 3. This type of book-keeping is not new practice: in a September 2000 notice to brokers, the SEC explained that the Net Capital Rule required firms subject to adverse awards to book the award as a liability despite that the appeal process had not been exhausted and no judgment had been entered. The SEC's rationale for requiring the immediate booking of the award was that "grounds for revision on appeal are very limited." *See* NASD Notice to Members 00-63, Doc. 1, Ex. 15.

---

[2] Less than a week later, another arbitration panel in a separate case entered a $130,788.88 award against Wilbanks. *See* Doc. 11, Ex. 9, Arbitration Award in FINRA Case No. 16-00395.

Because the award was an immediate liability, FINRA informed Wilbanks that, per FINRA Rule 4110(b)(1), it must suspend all business operations until it was in compliance with the Net Capital Rule. Further, Securities and Exchange Act Rules 17a-11(b) and (g) required Wilbanks to periodically notify the SEC and FINRA of its Net Capital deficiency. Doc. 11, Ex. 3. Wilbanks's clearinghouse, RBC Correspondent Services, then informed it that Wilbanks's net capital deficiency meant RBC would restrict its ability to trade. Doc. 11, Ex. D. Wilbanks was thus more or less barred from conducting further business.

Wilbanks responded quickly to stave off closure. On April 20, 2017, it moved to vacate the $1.07 million arbitration award in the U.S. District Court for the District of Colorado. *See* Doc. 11, Ex. 5, *Huitt v. Wilbanks Securities, Inc.*, No. 17-cv-00919-STV. In short, Wilbanks believes substantive unfairness and procedural irregularities plagued the arbitration proceedings. The District Court for the District of Colorado is presently considering the validity of those awards and those issues are not before this Court.

What is before this Court is Wilbanks's application for a temporary restraining order requiring FINRA and the SEC to retract the Notice of Net Capital Deficiency, which would permit Wilbanks to stay in business until the District Court in Colorado rules on its motions to vacate. In effect, Wilbanks asks that this Court excuse it from complying with SEC's Net Capital Rule, at least until a hearing on a preliminary injunction can be heard. Wilbanks believes that without the TRO, its seventy-five broker-employees will be out of work, clients will be unable to access their accounts, and Wilbanks Securities will effectively be put out of business—all of which it contends would result in a deprivation of due process under the Fifth Amendment. Wilbanks's specific argument appears to be that FINRA Rule

3

12904(j), which mandates that a firm who has suffered an adverse arbitration award must pay the award with 30 days unless it files a motion to vacate, excuses it from the SEC's own interpretation of its Net Capital Rule that requires it to immediately book the award as a liability. Whatever the merits of that argument,[3] the Court is powerless to grant relief because it lacks subject matter jurisdiction over the present action.

**II. Discussion**

As an initial matter, it is not clear that Wilbanks may assert any action against the SEC: sovereign immunity shields the United States, its agencies, and its employees from suit, absent a waiver. *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996 (1994). Consequently, the SEC is specifically immune from suit except in certain well-defined circumstances. *SEC v. Independence Drilling Corp.*, 595 F.2d 1006, 1008 (5th Cir. 1979); 15 U.S.C. §§ 77v(a), 78aa. Those circumstances consist of areas in which Congress has expressly waived sovereign immunity. *United States v. Dalm*, 494 U.S. 596, 608, 110 S.Ct. 1361 (1990). So absent this waiver, the Court lacks subject matter jurisdiction to adjudicate claims against the United States and its agencies, including the SEC. *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961 (1983). Further, it is plaintiff's burden to establish this waiver. *See James v. United States*, 970 F.2d 750, 753 (10th Cir. 1992).

Wilbanks, though, has not met this burden. In fact, it has not pointed to any waiver of sovereign immunity that would allow it to sue the SEC. In oral proceedings before the

---

[3] To be sure, Wilbanks has not briefed this issue since it obtained counsel. But at first blush, the rules do not appear to conflict. Wilbanks seems to overlook the fact that the SEC may require it to immediately book the award as a liability despite FINRA excusing it from *paying* the award while its motion to vacate is pending.

Court on May 5, 2017, Wilbanks seemed to suggest that the Declaratory Judgment Act may confer jurisdiction. Yet it is well-established that this Act cannot serve as an independent basis for jurisdiction, *see Skelly Oil Corp. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876 (1950), and does not "operate as an express waiver of sovereign immunity." *Worsham v. U.S. Dep't of the Treasury*, 2013 WL 5274358, at *7 (D. Md. Sept. 17, 2013). In short, the Act "neither provides nor denies a jurisdictional basis for actions under federal law." *Id.*

But in any event, all of Wilbanks's claims, including those against FINRA, suffer from another jurisdictional defect: Wilbanks has failed to first seek relief under the Exchange Act's exclusive review scheme.

The Exchange Act creates a comprehensive, multi-tiered scheme for reviewing FINRA regulatory actions. *See, e.g., Swirsky v. NASD*, 124 F.3d 59, 61 (1st Cir. 1997); *see First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 696 (3d Cir. 1979), *cert. denied*, 444 U.S. 1074 (1980). Any proceeding in which FINRA issues a disciplinary sanction is subject to de novo review by the SEC, either upon application of the aggrieved party or on the Commission's own motion. 15 U.S.C. § 78s(d). The SEC then makes an independent determination as to liability, including whether FINRA's determination was in accordance with its rules and FINRA applied its rules in a manner consistent with the purposes of the Exchange Act. 15 U.S.C. § 78s(e)(1)(A). Under 15 U.S.C. § 78s(e)(1)(A) and (B), the SEC can affirm, set aside, or modify any sanction, or simply remand the case to FINRA for further proceedings. The aggrieved party can then seek judicial review exclusively in the

5

United States Court of Appeals for the D.C. Circuit or in the circuit in which the party resides or has its principal place of business. 15 U.S.C. § 78y(a)(1),(3).

Failure to exhaust these administrative review procedures "render[s] the district court without jurisdiction to entertain the suit." *First Jersey Sec., Inc.*, 605 F.2d at 700 (granting writ of mandamus directing district court to dismiss action to enjoin NASD disciplinary proceeding). This Court would be far from the first to dismiss a securities-broker's challenge to SEC and FINRA rules; federal courts have consistently held that the Exchange Act's exclusive review requirements deprive district courts of subject matter jurisdiction outside of the statutorily mandated review process. *See, e.g.*, *Swirsky v. NASD*, 124 F. 3d 59 (1st Cir. 1997); *Barbara v. New York Stock Exch., Inc.*, 99 F. 3d 49 (2d Cir. 1996); *Mister Discount Stockbrokers, Inc. v. SEC*, 768 F.2d 875 (7th Cir. 1985); *Merrill Lynch, Pierce, Fenner & Smith v. NASD*, 616 F.2d 1363 (5th Cir. 1980); *Charles Schwab & Co., Inc. v. FINRA, Inc.,* 861 F. Supp. 2d 1063 (N.D. Cal. 2012); *Pyramid Fin. Corp. v. FINRA, Inc.*, No. 10-CV-03797-LHK, 2010 U.S. Dist. LEXIS 90543 (N.D. Cal. Aug. 27, 2010); *Empire Fin. Group, Inc. v. FINRA, Inc.*, No. 08-80534-CIV-RYSKAMP/VITUNAC, 2009 U.S. Dist. LEXIS 133643 (S. D. Fl. Jan. 15, 2009).

Wilbanks, however, offers two reasons why these cases do not foreclose relief. The first is that the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, vests jurisdiction exclusively in the federal courts:

> The district courts . . . shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder."

This case, Wilbanks contends, is precisely the type Congress envisioned in conferring jurisdiction in the federal courts over Exchange Act violations. Yet while courts have noted that the "purpose of the provision is to provide exclusive federal jurisdiction for suits brought by the SEC or private parties in response to substantive violations" of the Exchange Act, they have "reject[ed] the notion that this provision conclusively establishe[s] jurisdiction in the district court" to hear challenges to FINRA or NASD[4] disciplinary proceedings. *Id*.

Wilbanks counters that even if these cases normally would require an aggrieved party to petition the SEC for relief, there is a narrow exception waiving this requirement for constitutional issues, which it argues falls within the district court's—not the SEC's—expertise. In support, Wilbanks points to *Free Enterprise Fund. V. Pub. Co. Accounting Oversight Board.*, 561 U.S. 477, 130 S.Ct. 3138 (2010), in which the Supreme Court held that the existence of agency-review provisions do not necessarily vest exclusive jurisdiction within the agency. Rather, a district court would have jurisdiction where "a finding of preclusion would foreclose all meaningful judicial review, if the suit is wholly collateral to a statute's review provisions, and if the claims are outside the agency's expertise." *Id*. at 489. In carving out, or rather reaffirming, this exception, the Court upheld the district court's subject matter jurisdiction over a constitutional challenge to the existence of the Public Company Accounting Oversight Board, a self-regulatory

---

[4] The NASA, or the National Association of Securities Dealers, Inc., merged with the New York Stock Exchange's regulation committee to form FINRA in 2007. FINRA is merely the successor organization to the NASD. *Scottsdale Capital Advisors Corp. v. Fin. Indus. Regulatory Auth., Inc.*, 844 F.3d 414, 417 n.1 (4th Cir. 2016), *cert. denied*, (U.S. Apr. 24, 2017).

organization vested with significant power (the ability to investigate and discipline accounting firms) despite its members being subject to inadequate oversight since they could only be removed by the SEC under special circumstances. *Id*. at 483, 486.

Marked differences between this case and *Free Enterprise*, however, compel the Court to find subject matter lacking here. For one, petitioners in *Free Enterprise* were challenging the constitutionality of the very existence of the Board. *Id*. at 490. This separation-of-powers question was not one that rested exclusively within the expertise of the SEC. District Courts were "at no disadvantage in answering" these "standard questions of administrative law." *Id*. at 491. That is far from the case here. "Plaintiffs challenge actions squarely within the Commission's competence and expertise: the application of the Net Capital rule to securities brokers. The procedures for administrative review . . . are designed to bring agency expertise to bear on the issue, and those procedures are therefore exclusive." *Pyramid Fin.*, 2010 U.S. Dist. LEXIS 90543 at *7–8. The Court will not permit Wilbanks to dress up its challenge to the Net Capital Rule as a constitutional issue. If every court allowed a securities-broker to circumscribe the SEC's review procedures by referencing Due Process or the like, that decision would render the review procedures feckless. Wilbanks may mask his claim under the Fifth Amendment, but at bottom it is no more than a challenge to the way FINRA is applying the Net Capital Rule—a question well within the field of securities regulation.

Further, the petitioners in *Free Enterprise* had no avenue for judicial review; the Board had not yet subjected them to any sanction, meaning that they would instead have to "bet the farm . . . by taking violative action before testing the validity of the law"—

which the Supreme Court is normally loath to do. 561 U.S. at 490 (quotations omitted). Here, the SEC, through FINRA, has already made Wilbanks subject to the Net Capital Rule. Wilbanks need not violate another rule to seek relief through the Exchange Act's established review procedures.

In short, the Court sees no basis for departing from the judicial consensus that the doctrine of exhaustion of remedies applies. Of course, the exception to this doctrine is where the petitioner shows the available administrative procedure is clearly inadequate to prevent irreparable injury. *See, e.g., PennMont Securities v. Frucher*, 586 F.3d 242, 246 (3d Cir. 2009). And Wilbanks believes its imminent closure is one such irreparable injury. Yet unfortunately for Wilbanks, "claims of corporate financial collapse cannot satisfy the irreparable harm exception, given that financial harm can occur in many, if not most, disciplinary hearings of securities traders." *Id.* at 246. Were it otherwise, "[a]ny company threatened by an NASD hearing could run into district court claiming that the imposition of sanctions would result in irreparable injury." *First Jersey Sec.*, 605 F.2d at 696–697. Because "SRO action likely to result in termination of a business cannot constitute irreparable harm," Wilbanks has not demonstrated the prospect of irreparable injury required to confer jurisdiction in this matter. *Pyramid Fin.*, 2010 U.S. Dist. LEXIS 90543 at *8. The Court therefore denies Plaintiff's application for a temporary restraining order and dismisses this action without prejudice.

IT IS SO ORDERED this 10th day of May 2017.

_David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE